UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL SCHORE and CHI-LU SCHORE, | CASE NO. C17-1777-JCC |
| Plaintiffs, | ORDER |
| v. | |
| RENTON COLLECTIONS, INC., | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' motion for partial summary judgment (Dkt. No. 7) and Defendant's cross-motion for summary judgment (Dkt. No. 8). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS Plaintiffs' motion (Dkt. No. 7) and DENIES Defendant's cross-motion (Dkt. No. 8) for the reasons explained herein.

I.  **BACKGROUND**

On January 7, 2017, Plaintiff Chi-Lu Schore received medical treatment at Seattle Emergency Physicians ("SEP"). (Dkt. No. 7-1 at 12.) Schore had health insurance and assumed the procedure was covered. (*Id*. at 2.) In fact, the procedure was applied to Schore's deductible, and her insurer billed her $412. (*Id*. at 12.) Schore did not initially pay the bill. (*Id*. at 2.)

In early May 2017, Schore received a letter from Defendant Renton Collections, Inc. ("RCI") that stated her past due account had been "assigned to our office for collection by

SEATTLE EMERGENY PHYSNS." (*Id.* at 7.) The letter directed Schore to remit payment of $412 to RCI on its website or by mail. (*Id.*) On May 19, 2017, Schore's husband contacted SEP, confirmed the outstanding debt, and paid off the balance via credit card. (Dkt. No. 7-2 at 2.) To ensure the claim was resolved, Mr. Schore called RCI and notified it of the payment to SEP. (*Id.*) Despite the Schores' payment, RCI subsequently called them several times attempting to collect the SEP medical debt.[1]

On August 28, 2017, the Schores sent a letter to RCI challenging the debt. (Dkt. No. 7-1 at 9.) On September 29, 2017, RCI responded by letter, stating it had "contacted the original creditor and confirmed the validity and amount of the debt, [and] whether or not any payments were made." (*Id.* at 11.) RCI included an invoice from SEP that showed the balance of $412 had been paid on May 19, 2017. (*Id.*) Notwithstanding the invoice, RCI wrote that "the amounts are currently due and owing from you" and directed the Schores to remit a $412 payment. (*Id.*)

The Schores filed this lawsuit alleging RCI violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Washington Collection Agency Act ("WCAA"), Revised Code of Washington § 19.16, *et seq.*, and the Washington Consumer Protection Act ("WCPA") Revised Code of Washington § 19.86, *et seq.*, by attempting to collect a debt that they already paid. (Dkt. No. 1.) The parties have submitted cross-motions for summary judgment on the issue of RCI's liability.

## II. DISCUSSION

### A. RCI's Request for a Continuance

RCI asks the Court to grant a continuance pursuant to Federal Rule of Civil Procedure 56(d), if it concludes that summary judgment is premature. (Dkt. No. 8 at 19.) The Court may continue a motion for summary judgment when the nonmoving party sets forth "specified reasons [why] it cannot present facts essential to justify its opposition" to summary judgment.

---

[1] The Schores report receiving phone calls on June 13, 2017, July 14, 2017, August 25, 2017, and September 8, 2017. (Dkt. No. 7-1 at 2–3.)

Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (citing Fed. R. Civ. P. 56(f)).

RCI has not identified by affidavit the specific facts that additional discovery would reveal or explained how such information would preclude summary judgment. RCI generally states that it has not conducted certain discovery—for example, depositions—but does not explain how the discovery would aid it in opposing summary judgment.[2] (Dkt. No. 11 at 2.) The Court therefore DENIES RCI's motion for a continuance under Rule 56(d).

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). When the party moving for summary judgment also bears the burden of persuasion at trial, "to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).

### C. Plaintiffs' FDCPA Claim

"Congress enacted the FDCPA [15 U.S.C. § 1692, *et seq.*] to protect consumers from improper conduct and illegitimate collection practices without imposing unnecessary restrictions

---

[2] RCI does not dispute any of the evidence that supports Plaintiffs' claims and argues it is entitled to summary judgment based on that same evidence. (Dkt. No. 8 at 20.)

on ethical debt collectors." *Clark v. Capital Credit & Collections Srvs.*, 460 F.3d 1162, 1169-70 (9th Cir. 2006). The FDCPA is a strict liability statute, meaning that a plaintiff only need show that a debt collector violated the statute, not that the violation was knowing or intentional. *McCollough v. Johnson, Roden & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *Clark*, 460 F.3d at 1175-76. To determine if a violation occurred, the debt collector's actions are evaluated under the "least sophisticated debtor" standard. *McCollough*, 637 F.3d at 952. The standard is objective, and asks whether "the least sophisticated debtor would have been misled" by the debt collector's conduct. *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

The parties do not dispute that RCI is a debt collector subject to the FDCPA's provisions. Nor do they dispute the facts underlying this lawsuit. Rather the parties dispute whether RCI's collection attempts represent violations of sections 1692e and 1692f of the FDCPA.

1.  <u>15 U.S.C. Sections 1692e and 1692f</u>

Under 15 U.S.C. section 1692e, debt collectors are prohibited from employing "false, deceptive, or misleading representations or means in connection with the collection of any debt." A debt collector violates section 1692e when it "frustrate[s] a debtor's ability to intelligently choose an appropriate response to a collection effort." *Davis v. Hollins Law*, 832 F.3d 962, 964 (9th Cir. 2016). In addition to the general prohibition on "false, deceptive, or misleading representations," the statute includes a non-exhaustive list of prohibited practices.[3] *Davis*, 832 F.3d at 963-64. One provision of section 1692e prohibits debt collectors from making a "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

Under 15 U.S.C. section 1692f, debt collectors are barred from using "unfair or unconscionable means to collect or attempt to collect any debt." Like section 1692e, section

---

[3] "A debt collection practice can be 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subdivisions of the § 1692e." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

1692f identifies eight non-exhaustive examples of unfair or unconscionable means of collecting a debt. *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994).

### 2. Violations Under Sections 1692e and 1692f.

The Schores allege that RCI violated sections 1692e and 1692f by continuing its collection attempts after they had paid the debt. (Dkt. No. 7 at 7.) The invoice RCI sent to the Schores shows that the $412 debt was paid to SEP on May 19, 2017 and that the account had a $0.00 balance. (Dkt. No. 7-1 at 12.) Mr. Schore informed RCI of the payment by phone: once on May 22, 2017, and again on June 13, 2017. (Dkt. No. 7-2 at 2.) Despite these notifications, RCI continued to call the Schores attempting to collect the debt.[4] (Dkt. No. 7-1 at 2-3.)

The Schores then wrote to RCI on August 29, 2017, to challenge the debt. (*Id*. at 7-1 at 9.) RCI responded with a letter that stated it "contacted the original creditor and confirmed the validity and amount of the debt." (*Id*. at 11.) RCI again demanded payment even though it was in possession of the SEP invoice that showed the debt had been paid in full on May 19, 2017. (*Compare* Dkt. No. 7-1 at 11, *with* Dkt. No. 7-1 at 12–13.) RCI even stated "[t]he information and the amount demanded in the notices RCI sent you are correct, and the amounts are currently due and owing from you." (Dkt. No. 7-1 at 11.)

RCI does not contradict these facts through testimony or documentary evidence. RCI provides a declaration from the custodian of records for SEP's payment processor, Intermedix, who states it did not inform RCI of the payment until after this lawsuit was filed. (Dkt. No. 10 at 2.) But that claim is directly contradicted by the SEP invoice RCI had that shows the debt was paid. (Dkt. 10-1 at 2.) It is further belied by RCI's statement that it had contacted SEP in September and confirmed the validity of the debt—a debt that SEP's own records confirm was paid on May 19, 2017. (Dkt. No. 7-1 at 12–13.)

The Court finds that the Schores have met their initial burden on summary judgment to demonstrate that there are no disputes of genuine fact and that RCI violated 15 U.S.C. §§ 1692e

---

[4] RCI does not deny making the calls in an attempt to collect the debt. (Dkt. No. 9 at 2.)

and 1692f as a matter of law. RCI's continued attempts to collect a debt that was no longer owed represented a false characterization of the amount of the debt in violation of § 1692e. RCI's conduct also was an unfair means of attempting to collect a debt in violation of § 1692f, because under the least sophisticated debtor standard, the Schores could have reasonably thought they had to pay the same debt twice.

### 3. RCI's Assignment Defense

While RCI does not create any genuine issues of material fact to rebut the Schores' claims, it argues that its conduct did not violate the FDCPA as a matter of law. RCI asserts that it could not have violated the FDCPA because SEP assigned the debt to RCI, and the Schores were therefore required to pay RCI and not SEP. (Dkt. No. 8 at 2.) Since the Schores were aware that SEP had assigned the debt to RCI for collection, RCI argues that its efforts to collect were legal because "the balance of $412.00 was due on the account each and every time RCI demanded payment." (*Id.* at 5.) To support its assignment theory, RCI cites to a handful of contract cases, none of which deal with debt collection. (*Id.* at 5–6) (citing *e.g.*, *Ropes, Inc. v. Rubinstein*, 104 P.2d 329, 333 (Wash. 1940)).

In the debt collector context, Washington law recognizes two types of assignments: absolute and principal-agent. *DeBenedictus v. Hagen*, 890 P.2d 529, 532 (Wn. Ct. App. 1995); 6A C.J.S. Assignments § 96 (2018). An absolute assignment occurs when a party relinquishes its property interest in a debt—"a complete sale of the claim." *DeBenedictus*, 890 P.2d at 532. A principal-agent assignment occurs when a creditor assigns a debt to enable collection, but the creditor retains its interest in the obligation. *Id.* Such an assignment only "transfers the title of the claim, so the assignee can sue in his or her own name." *Id.* The assignment type turns on the intent of the assignee and the assignor. *Id.* The existence of an assignment is a question of fact that the party claiming to be the assignee has the burden to prove. *See MRC Receivables Corp. v. Zion*, 218 P.3d 621, 623 (Wash. Ct. App. 2009).

The cases that RCI cites in support of its legal theory deal with a debtor's duties when

their obligation is sold through an absolute assignment. (Dkt. No. 8 at 6) (citing *e.g.*, *Stansbery v. Medo-Land Dairy*, 105 P.2d 86, 90 (1940)). Based on these cases, RCI asserts that once a debtor is notified of an assignment, the assignor cannot release the debtor; rather, the debtor must pay the assignee. (Dkt. No. 8 at 5.) Accordingly, RCI's position necessarily turns on whether SEP's assignment of the Shores' debt was an absolute assignment.

RCI has not presented evidence that establishes an absolute assignment. RCI states it did not have a written assignment agreement with SEP. (Dkt. No. 16 at 3) ("In this case . . . there is no written assignment agreement.") In his declaration, RCI's President implies that the company purchased the account, stating that "RCI was the owner by assignment of the account against the Schores." (Dkt. No. 9 at 2.) Even if taken as true, that statement does not establish that there was an absolute assignment, and there is no testimony from anyone at SEP or Intermedix that describes the terms of the assignment.

Moreover, the evidence in the record tends to contradict RCI's position that it had an absolute assignment. None of RCI's communications to the Shores' suggest that RCI purchased the debt from SEP. RCI's first letter to the Schores states that the "account has been assigned to our office *for collection* by SEATTLE EMERGENCY PHYSNS." (Dkt. No. 9 at 7) (emphasis added). Its September 29 letter states that "RCI has also confirmed that this debt has not been assigned to any other entity *for collections*." (*Id.* at 10) (emphasis added). Most tellingly, the assignor, SEP, accepted the Schores' payment on the debt. (Dkt. No. 7-2 at 2.) This evidence tends to show that the debt was assigned to RCI for the purpose of collection; in other words, that it was a principle-agent assignment. *See DeBenedictus*, 890 P.2d at 532. RCI's position that it could continue to attempt to collect a debt the Schores had already paid is unavailing.

Therefore, the Court rejects RCI's defense that it possessed an absolute assignment that required the Schores to remit payment to RCI and not SEP. Even assuming, *arguendo*, that RCI had an absolute assignment, the Court concludes that its conduct still violated the FDCPA. RCI admits that the Schores "were not required to double-pay" their debt. (Dkt. No. 16 at 4.) But that

is exactly what RCI was telling the Schores to do in its September 29 letter. In the same breath, RCI stated that the debt was still owing while providing an invoice that showed the Schores had paid in full. (Dkt. No. 7-1 at 11–13.) RCI did not inform the Schores that they had paid the wrong party. RCI did not inform the Schores that they needed to contact SEP to get a refund. RCI did not seek reimbursement from SEP in order to satisfy the debt. RCI simply demanded that the Schores pay the $412 again. This is the exact type of deceptive and misleading conduct that the FDCPA was intended to stop. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) (FDCPA is concerned with preventing "genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.")

For the above reasons, the Court GRANTS partial summary judgment for Plaintiffs on their claim that RCI violated 15 U.S.C. §§ 1692e and 1692f. RCI's cross-motion on Plaintiffs' FDCPA claim is DENIED.

### D. Plaintiffs' WCAA and WCPA claims

The WCAA is Washington's counterpart to the FDCPA. *See Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009). "Like the FDCPA, [WCAA] prohibits collection agencies from making false representations as to the legal status of a debt, threatening the debtor with impairment of credit rating, attempting to collect amounts not actually owed, or implying legal liability for costs not actually recoverable, such as attorney fees or investigation fees, among other practices." *Id.* (citing Wash. Rev. Code § 19.16.250).

WCAA does not provide a debtor with a cause of action. *Genschorck v. Suttell & Hammer, P.S.*, Case No. C12-0615-TOR, slip op. at 3 (E.D. Wash. Nov. 21, 2013) (citing *Connelly v. Puget Sound Collections, Inc.*, 553 P.2d 1354 (Wash. 1976)). Rather, a violation of WCAA represents a per se violation of the WCPA. Wash. Rev. Code. § 19.16.440; *Evergreen Collectors v. Holt*, 803 P.2d 10, 12 (Wash. Ct. App. 1991). Once a plaintiff establishes a *per se* violation of the WCPA, she need only demonstrate that the violation proximately caused injury to her person or property. *Panag*, 204 P.3d at 885 (citation omitted).

### 1. *Per Se* Violation of WCPA.

The WCAA prohibits debt collectors from attempting to collect money beyond the principal, unless that additional amount is authorized either by the debtor's original agreement or by statute. Wash. Rev. Code § 19.16.250(21); *see also Panag*, 204 P.3d at 897 (WCAA protects consumers against attempts to collect "amounts not actually owed"). Here, the Schores have shown that RCI demanded payment in excess of the debt owed. First, RCI attempted to collect a debt that the Schores had paid in full. *See* Part II.C.2 *supra*. Second, RCI's collection efforts—if successful—would have required the Schores' to pay the same debt twice. *See* Part II.C.3 *supra*. This conduct constituted an attempt to collect an amount in excess of the principal, that was neither authorized by law nor by an agreement between the debtor and the creditor. Thus, the Court finds that RCI committed a per se violation of WCAA.

### 2. Injury and Causation.

The Schores have also shown that RCI's violation of the WCAA caused an injury to their property, thus proving that RCI violated the WCPA. An injury occurs when "the plaintiff was wrongfully induced to . . . incur expenses that would not otherwise have been incurred." *Panag*, 204 P.3d at 902 (internal quotation marks and citation omitted). "Consulting an attorney to dispel uncertainty regarding the nature of alleged debt is distinct from consulting an attorney to institute a CPA claim. . . . Although [instituting a CPA claim] is insufficient to show injury to business or property, [consultation to dispel uncertainty] is not." *Id.* The Schores have testified that they were forced to incur the cost of hiring an attorney because of RCI's actions. (Dkt. No. 7-1 at 2.) They have testified that they hired an attorney not to institute this action, but to "determine their legal rights and responsibilities." (*Id.*) RCI has not disputed that testimony.

Contrary to RCI's position that "Plaintiffs have failed to state a claim under WCPA because Plaintiffs do not have actionable actual damages," WCPA does not require proof of actual damages. (Dkt. No. 8 at 15.); *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 211 (Wash. 1987) (the CPA "uses the term 'injured' rather than suffering 'damages.' This distinction makes

it clear that no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice . . . .") Moreover, but for RCI's continuous attempts to collect the debt, the Schores would not have incurred an injury.

The Court finds that the Schores have met their burden to show RCI violated WCPA, and GRANTS the Schores' motion for summary judgment on this issue.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgement (Dkt. No. 7) is GRANTED, and RCI's cross-motion for summary judgment (Dkt. No. 8) is DENIED. The Court DIRECTS the Clerk to reset the status conference in this case to May 22, 2018 at 9:00 a.m.

DATED this 1st day of May 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE